Justice SCALIA, dissenting.
I join Parts I, II, and III-B of Justice THOMAS's dissent. I do not join Part III-A because I do not agree that what is necessary and proper to enforce a statute validly enacted pursuant to an enumerated power is not itself necessary and proper to the execution of an enumerated power. It is my view that if "Congress has the authority" to act, then it also " 'possesses every power needed' " to make that action " 'effective.' " Gonzales v. Raich, 545 U.S. 1, 36, 125 S.Ct. 2195, 162 L.Ed.2d 1 (2005) (SCALIA, J., concurring in judgment) (quoting United States v. Wrightwood Dairy Co., 315 U.S. 110, 118-119, 62 S.Ct. 523, 86 L.Ed. 726 (1942) ). If I thought that SORNA's registration requirement were " 'reasonably adapted,' " Raich, supra, at 37, 125 S.Ct. 2195, to carrying into execution some other, valid enactment, I would sustain it.
But it is not. The lynchpin of the Court's reasoning is that Kebodeaux was "subject to a federal registration requirement"-the Wetterling Act-at the time of his offense, and so the Necessary and Proper Clause "authorized Congress to modify the requirement as in SORNA and to apply the modified requirement to Kebodeaux." Ante, at 2502. That does not establish, however, that the Wetterling Act's registration requirement was itself a valid exercise of any federal power, or that *2510 SORNA is designed to carry the Wetterling Act into execution. The former proposition is dubious, the latter obviously untrue.
Justice THOMAS, with whom Justice SCALIA joins as to Parts I, II, and III-B, dissenting.
*407 Anthony Kebodeaux was convicted under the Sex Offender Registration and Notification Act (SORNA), 42 U.S.C. § 16901 et seq., for failing to update his sex offender registration when he moved from one Texas city to another. The Court today holds that Congress has power under the Necessary and Proper Clause to enact SORNA and criminalize Kebodeaux's failure to update his registration. I disagree. As applied to Kebodeaux, SORNA does not "carr[y] into Execution" any of the federal powers enumerated in the Constitution. Art. I, § 8, cl. 18. Rather, it usurps the general police power vested in the States. Because SORNA's registration requirements are unconstitutional as applied to Kebodeaux, I respectfully dissent.
I
Congress enacted SORNA in 2006. SORNA requires that every "sex offender shall register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student." 42 U.S.C. § 16913(a).[1] These requirements "apply to all sex offenders, including sex offenders convicted of the offense for which registration is required prior to the enactment of [SORNA]." 28 CFR § 72.3 (2012). As relevant here, SORNA makes it a federal crime when someone who is required to register as a sex offender "knowingly fails to register or update a registration" and that person "is a sex offender [as defined by SORNA] by reason of a conviction under Federal law (including the Uniform Code of Military Justice)." 18 U.S.C. §§ 2250(a)(2)(A), (3).
*408 In March 1999, Anthony Kebodeaux had consensual sex with a 15-year-old girl when he was a 20-year-old Airman in the U.S. Air Force. He was convicted by a court-martial of carnal knowledge of a female under the age of 16, in violation of Article 120(b) of the Uniform Code of Military Justice (UCMJ). He was sentenced to three months' imprisonment and received a bad-conduct discharge. He completed his sentence in September 1999 and was no longer in federal custody or the military when Congress enacted SORNA, which required him to register as a sex offender. In 2007, Kebodeaux failed to update his sex-offender registration within three days of moving from El Paso, Texas, to San Antonio, Texas. He was convicted under § 2250(a)(2)(A) in 2008 and sentenced to a year and a day in prison. The question before the Court is whether Congress has power to require Kebodeaux to register as a sex offender and to criminalize his failure to do so.
II
A
The Constitution creates a Federal Government with limited powers. Congress has no powers except those specified in the Constitution. See Marbury v. Madison, 1 Cranch 137, 176, 2 L.Ed. 60 (1803) (Marshall, C.J.) ("The powers of the legislature are defined, and limited; and that those limits may not be mistaken, or forgotten, the constitution is written"). Thus, "[e]very law enacted by Congress must be based on one or more of its powers enumerated *2511 in the Constitution." United States v. Morrison, 529 U.S. 598, 607, 120 S.Ct. 1740, 146 L.Ed.2d 658 (2000).
A different default rule applies to the States. As the Tenth Amendment makes clear, the States enjoy all powers that the Constitution does not withhold from them. ("The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people") While the powers of Congress are "few and defined," the powers that "remain in *409 the State governments are numerous and indefinite." The Federalist No. 45, p. 328 (B. Wright ed. 1961) (J. Madison).
The Constitution sets forth Congress' limited powers in Article I. That Article begins by "vest[ing]" in Congress "[a]ll legislative Powers herein granted," and then enumerates those powers in § 8. The final clause of § 8, the Necessary and Proper Clause, gives Congress power "[t]o make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers and all other Powers vested by this Constitution in the Government of the United States, or in any Department or Officer thereof." Art. I, § 8, cl. 18. Importantly, the Necessary and Proper Clause is not a freestanding grant of congressional power, but rather an authorization to makes laws that are necessary to execute both the powers vested in Congress by the preceding clauses of § 8, and the powers vested in Congress and the other branches by other provisions of the Constitution. See, e.g., Kinsella v. United States ex rel. Singleton, 361 U.S. 234, 247, 80 S.Ct. 297, 4 L.Ed.2d 268 (1960) ("The [Necessary and Proper Clause] is not itself a grant of power, but a caveat that the Congress possesses all the means necessary to carry out the specifically granted 'foregoing' powers of § 8 'and all other Powers vested by this Constitution' ").
In McCulloch v. Maryland, 4 Wheat. 316, 4 L.Ed. 579 (1819), Chief Justice Marshall famously set forth the Court's interpretation of the Necessary and Proper Clause:
"Let the end be legitimate, let it be within the scope of the constitution, and all means which are appropriate, which are plainly adapted to that end, which are not prohibited, but consist[ent] with the letter and spirit of the constitution, are constitutional." Id., at 421.
Under this formulation, a federal law is a valid exercise of Congress' power under the Clause if it satisfies a two-part test. "First, the law must be directed toward a 'legitimate' end, which McCulloch defines as one 'within the scope of the *410 [C]onstitution.' " United States v. Comstock, 560 U.S. 126, 160, 130 S.Ct. 1949, 176 L.Ed.2d 878 (2010) ( THOMAS, J., dissenting) (quoting 4 Wheat., at 421 ). In other words, the law must be directed at "carrying into Execution" one or more of the powers delegated to the Federal Government by the Constitution. Art. I, § 8, cl. 18. "Second, there must be a necessary and proper fit between the 'means' (the federal law) and the 'end' (the enumerated power or powers) it is designed to serve." Comstock, 560 U.S., at 160, 130 S.Ct. 1949 (THOMAS, J., dissenting). "The means Congress selects will be deemed 'necessary' if they are 'appropriate' and 'plainly adapted' to the exercise of an enumerated power, and 'proper' if they are not otherwise 'prohibited' by the Constitution and not ' [in]consistent' with its 'letter and spirit.' " Id., at 160-161, 130 S.Ct. 1949 (quoting Art. I, § 8, cl. 18 and McCulloch, 4 Wheat., at 421).
Both parts of this test are critical. "[N]o matter how 'necessary' or 'proper' an Act of Congress may be to its objective, Congress lacks authority to legislate if the objective is anything other than 'carrying *2512 into Execution' one or more of the Federal Government's enumerated powers." Comstock, supra, at 161, 130 S.Ct. 1949 (THOMAS, J., dissenting). As applied to Kebodeaux, SORNA fails this test.
B
It is undisputed that no enumerated power in Article I, § 8, gives Congress the power to punish sex offenders who fail to register, nor does any other provision in the Constitution vest Congress or the other branches of the Federal Government with such a power. Thus, SORNA is a valid exercise of congressional authority only if it is "necessary and proper for carrying into Execution" one or more of those federal powers enumerated in the Constitution.
In the course of this litigation, the Government has argued that Kebodeaux's conviction under § 2250(a)(2)(A) executes Congress' enumerated powers to spend for the general welfare, Art. I, § 8, cl. 1 ; to regulate interstate commerce, *411 § 8, cl. 3 ; and to regulate the armed forces, § 8, cl. 14. But none of these powers justifies applying § 2250(a)(2)(A) to Kebodeaux. The Spending Clause argument is a nonstarter. Section 2250(a) (2)(A) does not execute Congress' spending power because it regulates individuals who have not necessarily received federal funds of any kind. The Government contends that "federal funding and logistical support offered to States for their sex-offender-registration-and-notification programs can be effective only if persons required to register actually do so" and that " Congress may impose penalties on such individuals as a means of achieving that goal." Brief for United States 52. But we have never held that Congress gains the power to regulate private individuals merely because it provides money to the States in which they reside.
Nor does the Commerce Clause-the enumerated power that the Court has construed most broadly-support § 2250(a)(2)(A). Under this Court's precedents, Congress may use its Commerce Clause power to regulate (1) " 'the use of the channels of interstate commerce,' " (2) " 'the instrumentalities of interstate commerce, or persons or things in interstate commerce,' " and (3) economic activities that " 'substantially affect interstate commerce.' " United States v. Lopez, 514 U.S. 549, 558-559, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995) ; see also Morrison, 529 U.S., at 617, 120 S.Ct. 1740. Section 2250(a)(2)(A) does not fall within the first two categories because it is not limited to regulating sex offenders who have traveled in interstate commerce. Instead, it applies to all federal sex offenders who fail to register, even if they never cross state lines. Nor does § 2250(a)(2)(A) fall within the third category. Congress may not regulate noneconomic activity, such as sex crimes, based on the effect it might have on interstate commerce. Cf. Morrison, supra, at 617, 120 S.Ct. 1740. ("We ... reject the argument that Congress may regulate noneconomic, violent criminal conduct based solely on that conduct's aggregate effect on interstate commerce"). In short, § 2250(a)(2)(A) regulates activity that is neither *412 " 'interstate' " nor " 'commercial,' " 687 F.3d 232, 253 (C.A.5 2012), and, thus, it cannot be justified on the ground that it executes Congress' power to regulate interstate commerce.
Finally, Congress' power "[t]o make Rules for the Government and Regulation of the land and naval Forces" does not support Kebodeaux's conviction under § 2250(a)(2)(A). Art. I, § 8, cl. 14. Kebodeaux had long since fully served his criminal sentence for violating Article 120(b) of the UCMJ and was no longer in the military when Congress enacted SORNA. Congress does not retain a general police *2513 power over every person who has ever served in the military. See United States ex rel. Toth v. Quarles, 350 U.S. 11, 14, 76 S.Ct. 1, 100 L.Ed. 8 (1955) ("It has never been intimated by this Court ... that Article I military jurisdiction could be extended to civilian ex-soldiers who had severed all relationship with the military and its institutions.... [G]iven its natural meaning, the power granted Congress 'To make Rules' to regulate 'the land and naval Forces' would seem to restrict court-martial jurisdiction to persons who are actually members or part of the armed forces"). Accordingly, Kebodeaux's conviction under § 2250(a)(2)(A) cannot be sustained based on Congress' power over the military.
Moreover, it is clear from the face of SORNA and from the Government's arguments that it is not directed at "carrying into Execution" any of the federal powers enumerated in the Constitution, Art. I, § 8, cl. 18, but is instead aimed at protecting society from sex offenders and violent child predators. See 42 U.S.C. § 16901 ("In order to protect the public from sex offenders and offenders against children, and in response to the vicious attacks by violent predators against the victims listed below, Congress in this chapter establishes a comprehensive national system for the registration of those offenders"); Tr. of Oral Arg. 3 ("Convicted sex offenders pose a serious threat to public safety. When those convictions are entered under Federal law, Congress has the authority to impose both a criminal and a civil sanction *413 for that conduct in order to protect the public"); Brief for United States 3 (same).
Protecting society from sex offenders and violent child predators is an important and laudable endeavor. See Kennedy v. Louisiana, 554 U.S. 407, 467, 128 S.Ct. 2641, 171 L.Ed.2d 525 (2008) (ALITO, J., dissenting) (explaining that, for most Americans, sexual abuse of children is the "epitome of moral depravity"). But "the Constitution does not vest in Congress the authority to protect society from every bad act that might befall it." Comstock, 560 U.S., at 165, 130 S.Ct. 1949 (THOMAS, J., dissenting). The power to protect society from sex offenders is part of the general police power that the Framers reserved to the States or the people. See Amdt. 10; Morrison, supra, at 617, 120 S.Ct. 1740 ("[W]e can think of no better example of the police power, which the [Framers] denied the National Government and reposed in the States, than the suppression of violent crime and vindication of its victims"); Lopez,supra, at 561, n. 3, 115 S.Ct. 1624. (" '[T]he States possess primary authority for defining and enforcing the criminal law' " (quoting Brecht v. Abrahamson, 507 U.S. 619, 635, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) )).[2]
*2514 *414 The Government has failed to identify any enumerated power that § 2250(a)(2)(A)"carr[ies] into Execution" in this case. Accordingly, I would hold that § 2250(a)(2)(A) and the registration requirements that it enforces are unconstitutional as applied to Kebodeaux.
III
In concluding otherwise, the Court entirely skips McCulloch 's first step-determining whether the end served by SORNA is "within the scope of the [C]onstitution." 4 Wheat., at 421. The Court appears to believe that Congress' power "to 'make Rules for the ... Regulation of the *415 land and naval Forces' " justifies imposing SORNA's registration requirements on Kebodeaux. Ante, at 2502. But not one line of the opinion explains how SORNA is directed at regulating the armed forces. Instead, the Court explains how SORNA and the Wetterling Act serve various ends that are not enumerated in the Constitution. Cf. ante, at 2505 (explaining that SORNA was designed to "keep track of more offenders" and "encourage States ... to adopt its uniform standards"); ante, at 2503 (explaining that the Wetterling Act was designed to "protect the public from ... federal sex offenders and alleviate public safety concerns"). The Court's failure to link SORNA to any enumerated power results in analysis that is untethered from the Constitution and disregards the admonition that "[t]he powers of the legislature are defined, and limited." Marbury, 1 Cranch, at 176.
A
The Court's analysis is flawed at every step. It begins by explaining that "at the time of his offense Kebodeaux was subject to the federal Wetterling Act, an Act that imposed upon him registration requirements very similar to those that SORNA later mandated."[3] Ante, at 2501.
*416 But *2515 that is beside the point. Kebodeaux was convicted of violating SORNA's registration requirements, not the Wetterling Act's, and so the relevant question is what enumerated power SORNA "carr[ies] into Execution." "The Necessary and Proper Clause does not provide Congress with authority to enact any law simply because it furthers other laws Congress has enacted in the exercise of its incidental authority; the Clause plainly requires a showing that every federal statute 'carr[ies] into Execution' one or more of the Federal Government's enumerated powers." Comstock, 560 U.S., at 168, 130 S.Ct. 1949 (THOMAS, J., dissenting).
Nevertheless, apparently in an effort to bootstrap the Wetterling Act, the Court proceeds to determine whether the Wetterling Act (not SORNA) falls within Congress' power under the Necessary and Proper Clause. The Court first notes that the Clause " 'leave[s] to Congress a large discretion as to the means that may be employed in executing a given power,' " ante, at 2503 (quoting Lottery Case, 188 U.S. 321, 355, 23 S.Ct. 321, 47 L.Ed. 492 (1903) )-a fact that is entirely irrelevant under McCulloch 's first step of determining whether the end is itself legitimate. The Court then observes that the Necessary and Proper Clause
"authorizes Congress, in the implementation of other explicit powers, to create federal crimes, to confine offenders to prison, to hire guards and other prison personnel, to provide prisoners with medical care and educational training, to ensure the safety of those who may come into contact with prisoners, to ensure the public's safety through systems of parole and supervised release, and, where a federal prisoner's mental condition so requires, to confine that prisoner civilly after the expiration of his or her term of imprisonment." Ante, at 2503.
From these powers, the Court reasons that the Wetterling Act is valid because "Congress could reasonably conclude that registration requirements applied to federal sex offenders *417 after their release can help protect the public from those federal sex offenders and alleviate public safety concerns." Ante, at 2503. As I explained in Comstock, however, this mode of analysis confuses the inquiry. 560 U.S. at 168-169, 130 S.Ct. 1949 (THOMAS, J., dissenting). "Federal laws that criminalize conduct ..., establish prisons for those who engage in that conduct, and set rules for the care and treatment of prisoners awaiting trial or serving a criminal sentence" are only valid if they " 'Execut[e]' " an enumerated power. Id., at 169, 130 S.Ct. 1949. Here, for example, Congress has authority to enact Article 120(b) of the UCMJ, to enforce that provision against military personnel who violate it, and to confine them in a military prison while they are awaiting trial and serving a sentence. All of those actions "carr[y] into Execution" Congress' power to promote order and discipline within the military by regulating the conduct of military personnel. Art. I, § 8, cl. 14. *2516 But the enumerated power that justified Kebodeaux's conviction does not justify requiring him to register as a sex offender now that he is a civilian. If Kebodeaux were required to register as part of his criminal sentence, then registration would help execute the power that justifies his conviction. The court-martial here, however, did not impose registration requirements at Kebodeaux's sentencing. See ante, at 2503 (acknowledging that registration is a "civil requirement" and was "not a specific condition of Kebodeaux's release"). Enacted long after Kebodeaux had completed his sentence, SORNA cannot be justified as a punishment for the offense Kebodeaux committed while in the military because retroactively increasing his punishment would violate the Ex Post Facto Clause. See Peugh v. United States, 569 U.S. ----, ----, 133 S.Ct. 2072, 186 L.Ed.2d 84, 2013 WL 2459523 (2013) (slip op., at 8) (explaining that laws that " 'inflic[t] a greater punishment ... than the law annexed to the crime ... when committed' " violate the Ex Post Facto Clause) (quoting Calder v. Bull, 3 Dall. 386, 390, 1 L.Ed. 648 (1798) ); Peugh, supra, at ----, 133 S.Ct. 2072 (THOMAS, J., dissenting) (slip op., at 11) (explaining that "laws retroactively *418 increasing the punishment were ... understood to be ex post facto at the time of the founding"). As the Court below correctly recognized, "because SORNA's registration requirements are civil and were enacted after Kebodeaux committed his crime, the [G]overnment cannot justify their constitutionality on the ground that they merely punish Kebodeaux for the crime he committed while in the military." 687 F.3d, at 239. The only justification for SORNA that the Government has advanced is protection of the public, but that justification has nothing to do with Congress' power to regulate the armed forces.[4]
Finally, the Court asserts that the Wetterling Act is reasonable because it "took state interests into account by, for *419 the most part, requiring released federal offenders to register in accordance with state law," and its requirements are "reasonably narrow and precise." Ante, at 2504. But the degree to which the Wetterling Act or SORNA accommodates State interests and intrudes on the lives of individuals subject to registration is irrelevant because the Supremacy Clause makes federal law supreme. See Art. VI, cl. 2. *2517 "As long as it is acting within the powers granted it under the Constitution, Congress may impose its will on the States." Gregory v. Ashcroft, 501 U.S. 452, 460, 111 S.Ct. 2395, 115 L.Ed.2d 410 (1991). The fact that the Wetterling Act and SORNA may be "narrow" and "[take] state interests into account," ante, at 2516, is "not a matter of constitutional necessity, but an act of legislative grace." Comstock, 560 U.S., at 178, 130 S.Ct. 1949 (THOMAS, J., dissenting). These factors have no place in deciding whether a law "Execut[es]" an enumerated power.
B
The Court not only ignores the limitations on Congress' power set forth in the Constitution, but it also ignores the limits that it marked just three years ago in Comstock . In that case, this Court held that Congress has power under the Necessary and Proper Clause to enact 18 U.S.C. § 4248, which authorizes the Federal Government to civilly commit "sexually dangerous persons" beyond the date it lawfully could hold them on a charge or conviction for a federal crime. Comstock, 560 U.S., at 142, 130 S.Ct. 1949. The Court rebuffed the assertion that it was conferring a general police power on Congress by asserting that § 4248 was "limited to individuals already 'in the custody of the' Federal Government." Id., at 148, 130 S.Ct. 1949. The Solicitor General even conceded at oral argument that "the Federal Government would not have ... the power to commit a person who ... has been released from prison and whose period of supervised release is also completed" because "at that point the State police power over a person has been fully reestablished." Tr. of Oral Arg. in United States v. Comstock, O.T. 2009, No. 08-1224, p. 9.
*420 The Court and the Government today abandon even that meager restriction, which itself lies far beyond the constitutional limits. Kebodeaux was no longer in federal custody when Congress enacted SORNA, yet the Court disregards the fact that, even under Comstock, release from prison and supervised release terminates any hold the Federal Government might otherwise have and "fully reestablishe[d]" the State's police power over that individual.
* * *
The Framers believed that the division of powers between the Federal Government and the States would protect individual liberty. See New York v. United States, 505 U.S. 144, 181, 112 S.Ct. 2408, 120 L.Ed.2d 120 (1992) ( "[T]he Constitution divides authority between federal and state governments for the protection of individuals. State sovereignty is not just an end in itself: 'Rather, federalism secures to citizens the liberties that derive from the diffusion of sovereign power' " (quoting Coleman v. Thompson, 501 U.S. 722, 759, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) (Blackmun, J., dissenting))). The decision today upsets that careful balance. I respectfully dissent.

A "sex offender" is defined as "an individual who was convicted" of an offense that falls within the statute's defined offenses. 42 U.S.C. §§ 16911(1) and (5)-(7).

All 50 States have used their general police powers to enact sex offender registration laws. See, e.g., Ala.Code §§ 13A-11-200 to 13A-11-202, 13A-11-181 (2006) ; Alaska Stat. §§ 11.56.840, 12.63.010 to 12.63.100, 18.65.087, 28.05.048, 33.30.035 (2006) ; Ariz.Rev.Stat. Ann. §§ 13-3821 to 13-3825 (2001 and Supp. 2007); Ark.Code Ann. §§ 12-12-901 to 12-12-909 (2003 and Supp. 2007); Cal.Penal Code Ann. §§ 290 to 290.4 (2008) ; Colo.Rev.Stat. Ann. §§ 16-22-103 to 16-22-104, 18-3-412.5 (2007) ; Conn. Gen.Stat. §§ 54-251 to 54-254 (2008 Supp.); Del.Code Ann., Tit. 11, § 4120 (2007); Fla. Stat. Ann. §§ 775.13, 775.21 (2007) ; Ga.Code Ann. § 42-1-12 (Supp.2007); Haw.Rev.Stat. §§ 846E-1, 846E-2 (2006 Cum.Supp.); Idaho Code §§ 18-8304 to 18-8311 (Supp.2008); Ill. Comp. Stat., ch. 730, §§ 150/1 to 150/10, 152/101 to 152/121 (West 2006) ; Ind.Code §§ 11-8-8-1 to 11-8-8-7 (Supp.2007); Iowa Code §§ 692A.1 to 692A.16 (2003 and Supp. 2008); Kan. Stat. Ann. §§ 22-4901 to 22-4910 (1995); Ky.Rev.Stat. Ann. §§ 17.500 to 17.540 (Lexis 2003 and Supp. 2007); La.Rev.Stat. Ann. §§ 15:540 to 15:549 (2005 and Supp. 2008); Me.Rev.Stat. Ann., Tit. 34-A, §§ 11201 to 11204, 11221 to 11228 (2007 Supp. Pamphlet); Md.Crim. Proc.Code Ann. §§ 11-701 to 11-721 (Lexis 2001 and Supp. 2007); Mass. Gen. Laws, ch. 6, §§ 178D to 178T (West 2006 and Supp. 2008); Mich. Comp. Laws §§ 28.721 to 28.731 (West 2004 and Supp. 2008); Minn.Stat. Ann. § 243.166 (West 2003 and Supp. 2008); Miss.Code Ann. §§ 45-33-21 to 45-33-59 (West 1999 and Supp. 2007); Mo.Rev.Stat. §§ 589.400 to 589.425 (2003 and Supp. 2008), § 211.45 (2004); Mont.Code Ann. §§ 46-23-501 to 46-23-507 (2007); Neb.Rev.Stat. §§ 29-4001 to 29-4013 (2003 and Supp. 2007); Nev.Rev.Stat. §§ 179B.010 to 179B.250 (2007); N.H.Rev.Stat. Ann. §§ 651-B:1 to 651-B:7 (West 2007 and Supp. 2007); N.J. Stat. Ann. §§ 2C:7-1 to 2C:7-20 (West 2005 and Supp. 2008); N.M. Stat. Ann. §§ 29-11A-1 to 29-11A-8 (2004 and Supp. 2008); N.Y. Correc. Law Ann., Art. 6-C, §§ 168 to 168-V (West 2003 and Supp. 2008); N.C. Gen.Stat. Ann. §§ 14-208.5 to 14-208.26 (Lexis 2007) ; N.D. Cent.Code Ann. § 12.1-32-15 (Lexis 1997 and Supp. 2007); Ohio Rev.Code Ann. §§ 2950.01 to 2950.11 (West 2006 and Supp. 2008); Okla. Stat., Tit. 57, §§ 581 to 585 (West 2001), Tit. 57, §§ 591 to 594 (West 2007 Supp.); Ore.Rev.Stat. §§ 181.585 to 181.606, 181.826 (2007); 42 Pa. Cons.Stat. §§ 9791 to 9799.9 (2006); R.I. Gen. Laws §§ 11-37.1-1 to 11-37.1-12 (2002 and Supp. 2007); S.C.Code Ann. §§ 23-3-430 to 23-3-490 (2007 and Supp. 2007); S.D. Codified Laws §§ 22-24B-1 to 22-24B-15 (2006 and Supp. 2008); Tenn.Code Ann. §§ 40-39-201 to 40-39-212 (2006 and Supp. 2007); Tex.Crim. Proc.Code Ann., Arts. 62.001 to 62.002, 62.051 to 62.059 (Vernon 2006 and Supp. 2008); Utah Code Ann. § 77-27-21.5 (2003 and 2008 Supp.); Vt. Stat. Ann., Tit. 13, §§ 5401 to 5414 (1998 and Supp. 2007); Va.Code Ann. §§ 9.1-900 to 9.1-921 (2006 and Supp. 2007); Wash. Rev.Code §§ 4.24.550, 9A.44.130, 9A.44.140, 10.01.200, 70.48.470, 72.09.330 (2006); W. Va.Code Ann. §§ 15-12-1 to 15-12-10 (Lexis 2004 and Supp. 2007); Wis. Stat. §§ 301.45 to 301.48 (2005 and Supp. 2007); Wyo. Stat. Ann. §§ 7-19-301 to 7-19-307 (2005).

THE CHIEF JUSTICE wrongly asserts that the differences between the Wetterling Act and SORNA are "insignificant." Ante, at 2506 (opinion concurring in judgment). SORNA increases the federal penalty for failing to register from a misdemeanor punishable by no more than one year to a felony punishable by up to 10 years for a first offense. Compare 18 U.S.C. § 2250(a) with 42 U.S.C. § 14072(i) (2000 ed.). It is simply incorrect to minimize that change by saying that Kebodeaux received only a day more than he could have received for failing to register under the Wetterling Act. Ante, at 2506 (ROBERTS, C.J., concurring in judgment). The "legally prescribed range is the penalty affixed to the crime," Alleyne v. United States, --- U.S. ----, ----, 133 S.Ct. 2151, ----, 186 L.Ed.2d 314 (2013) and SORNA increased that range significantly. SORNA also requires that a sex offender who moves update his registration within three days of moving, instead of seven. Compare 42 U.S.C. § 16913(c) with App. to Pet. for Cert. 167a-168a. Thus, a person can be convicted under SORNA for conduct that would have complied with the Wetterling Act.

THE CHIEF JUSTICE contends that Congress has authority to impose registration as a consequence of Kebodeaux's conviction because "[a] servicemember will be less likely to violate a relevant military regulation if he knows that, having done so, he will be required to register as a sex offender years into the future." Ante, at 2506. But SORNA could not possibly have deterred Kebodeaux from violating any military regulation because it was enacted after he left the military.
Justice ALITO contends that, by trying members of the military in a military court, Congress exacerbated "the possibility that a convicted sex offender may escape [the state] registration [system]," and that SORNA is necessary and proper to correct this problem. Ante, at 2509 (opinion concurring in judgment). But Justice ALITO has not identified any enumerated power that gives Congress authority to address this supposed problem, and there is no evidence that such a problem exists. Indeed, Texas has indicated that SORNA undermines its registration system, rather than making it more effective. See Letter from Jeffrey S. Boyd, General Counsel and Acting Chief of Staff, Texas Office of the Governor, to Linda Baldwin, Director, SMART Office 1 (Aug. 17, 2011) ("Although we in Texas certainly appreciate and agree with the stated goals of SORNA, the adoption of this 'one-size-fits-all' federal legislation in Texas would in fact undermine the accomplishment of those objectives in Texas, just as it would in most other states"), online at http://www.ncleg. net/documentsites/committees/JLOCJPS/October% 2013,% 202011% 20Meeting/RD_ SORNA_General_Information_2011-10-13.pdf (as visited June 21, 2013, and available in Clerk of Court's case file).